UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

IMHOTEP H'SHAKA,

                    Petitioner,

          vs.

THOMAS RICKS,[1] Superintendent Upstate
Correctional Facility,

                    Respondent.

No. 9:07-cv-01116-JKS

MEMORANDUM DECISION

Petitioner Imhotep H'Shaka, formerly known as Corey Heath, a state prisoner proceeding

*pro se*, has filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254.  H'Shaka is

currently in the custody of the New York Department of Corrections, incarcerated at the Upstate

Correctional Facility.  Respondent has filed an answer.  H'Shaka has not replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial H'Shaka was convicted in the Greene County Court of Promoting

Prison Contraband in the First Degree (N.Y. Penal Law § 205.25[2]).  The first jury acquitted

H'Shaka of three assault counts and deadlocked on a fourth.  Upon retrial, the jury convicted

H'Shaka on the deadlocked assault count, Assault in the First Degree (N.Y. Penal Law §

120.10[1]).  H'Shaka was sentenced to an indeterminate prison term of three and one-half to

seven years on the promoting contraband charge and a determinate term of 15 years on the

assault conviction, to be served concurrently.  H'Shaka timely appealed his conviction to the

---

[1] Thomas Ricks, Superintendent, Upstate Correctional Facility, is substituted for H. D. Graham, Superintendent, Auburn Correctional Facility.  Fed. R. Civ. P. 25(d).

Appellate Division, Third Department, which affirmed his conviction on the assault charge, reversed his conviction on the contraband charge and remanded for a retrial on that charge. The New York Court of Appeals denied leave to appeal on February 28, 2006.[2] The Greene County Court dismissed the prison contraband charge on the basis of a speedy trial violation. H'Shaka then filed a motion to set aside his conviction under N.Y. Criminal Procedure Law § 440.10 in the Greene County Court, which denied the motion in a written decision.[3] The Appellate Division, Third Department, denied leave to appeal,[4] and the New York Court of Appeals dismissed H'Shaka's application for leave to appeal to that court on October 3, 2007, as unappealable.[5] H'Shaka timely filed his petition for relief in this Court on October 17, 2007, and his amended petition on December 17, 2007.

While H'Shaka was serving a prison sentence in Coxsackie Correctional Facility in Greene County, an incident occurred wherein two correction officers were injured. H'Shaka did not dispute that he slashed one of these correction officers with a razor blade. He claimed, however, that he was acting in self-defense. As a result of this incident, a prison disciplinary proceeding ensued that ultimately resulted in his confinement to the Special Housing Unit ("SHU") for 10 years.[6] It was this incident that gave rise to the conviction at issue in these proceedings.

---

[2] *People v. Heath*, 805 N.Y.S.2d 688 (App. Div. 2005), *lv. denied*, 845 N.E.2d 1284 (N.Y. 2006) (Table) (*Heath I*).

[3] Docket No. 13-12.

[4] Docket No. 13-14.

[5] *People v. Heath*, 878 N.E.2d 614 (N.Y. 2007) (Table) (*Heath II*).

[6] *Heath I*, 805 N.Y.S.2d at 689.

2

## II.  GROUNDS PRESENTED/DEFENSES

In his amended petition H'Shaka raises six grounds:  (1) his conviction violated the Double Jeopardy Clause; (2) the trial court improperly denied his for cause challenges to four jurors; (3) ineffective assistance of counsel; (4) trial court prevented him from presenting a state of mind defense; (5) the trial court improperly charged the jury with a duty to retreat instruction; and (6) by failing to re-prosecute him on the remanded prison contraband charge, the People created a repugnance in the assault conviction.  Respondent has asserted no affirmative defenses.[7]

## III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on

---

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

the supervisory power of the Supreme Court over federal courts.[10]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[11]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[12]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[13]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[14]  H'Shaka "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[15]

In applying this standard, this Court reviews the last reasoned decision by the state court.[16]  In addition, the state court's findings of fact are presumed to be correct unless the

---

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[16] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

petitioner rebuts this presumption by clear and convincing evidence.[17]  Where there is no

reasoned decision of the state court addressing the ground or grounds raised on the merits and no

independent state grounds exist for not addressing those grounds, this Court must decide the

issues *de novo* on the record before it.[18]  In so doing, because it is not clear that it did not so do,

the Court assumes that the state court decided the claim on the merits and the decision rested on

federal grounds.[19]  This Court gives the assumed decision of the state court the same AEDPA

deference that it would give a reasoned decision of the state court.[20]

      H'Shaka has not filed a Traverse.  28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order
> to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as
> true except to the extent that the judge finds from the evidence that they are not
> true.

Under § 2248, where there is no denial of the Respondent's allegations in the answer, or the

denial is merely formal unsupported by an evidentiary basis, the court must accept as true

Respondent's allegations.[21]

---

[17] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[18] *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[19] *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[20] *Jimenez*, 458 F.3d at 145–46.

[21] *See Carlson v. Landon*, 342 U.S. 524, 529 (1952); *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

IV.  DISCUSSION

Ground 1:  Double Jeopardy.

H'Shaka contends that by convicting him of the assault charge when he had already been punished through the prison disciplinary proceeding for the same conduct violated the Double Jeopardy Clause.  H'Shaka presented this issue on his direct appeal.  In rejecting H'Shaka'a argument, the Appellate Division held:

> The criminal prosecution of defendant for his conduct that day, despite the disciplinary sanction for the same conduct, does not violate the Double Jeopardy Clause of either the N.Y. or U.S. Constitution.  Although the administrative penalty was indeed severe, we are unpersuaded that this is one of those rare circumstances where the disciplinary sentence was so harsh and extreme as to invoke double jeopardy protection.[22]

The Second Circuit has held that, because New York prison disciplinary proceedings are civil in nature, the Double Jeopardy Clause is not implicated when a prisoner is subjected to both disciplinary sanctions and a criminal conviction arising out of the same conduct.[23]  Thus, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[24]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the H'Shaka's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or

---

[22] *Heath I*, 805 N.Y.S.2d at 690 (citations and internal quotation marks omitted).

[23] *Porter v. Coughlin*, 421 F.3d 141, 146-48 (2d Cir. 2005) (applying *Hudson v. United States*, 522 U.S. 93 (1997) and *Kennedy v. Mendoza-Powers*, 372 U.S. 144 (1963)).

[24] 28 U.S.C. § 2254(d).

6

erroneous, its application of clearly established law was objectively unreasonable.  H'Shaka is not entitled to relief under his first ground.

Ground 2:  Denial of For Cause Challenges to Jurors.

H'Shaka contends that in the second trial the trial court violated his right to an impartial jury under the Sixth Amendment by denying his for cause challenge: (1) of one juror who stated in *voir dire* that he would tend to believe the testimony of the correctional officers over that of a prison inmate; and (2) to three jurors who stated during *voir dire* that they would reject H'Shaka's self-defense claim.  H'Shaka claims that, as a result, he was forced to exhaust his peremptory challenges prior to completion of jury selection.  H'Shaka raised this claim in his direct appeal.  The Appellate Division did not address this claim, directly or indirectly.[25]

The Supreme Court has, however, directly addressed this issue.

> Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error.  But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.  We have long recognized that peremptory challenges are not of constitutional dimension.  They are a means to achieve the end of an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.  We conclude that no violation of petitioner's right to an impartial jury occurred.
> . . . Petitioner also argues that the trial court's failure to remove Huling for cause violated his Fourteenth Amendment right to due process by arbitrarily depriving him of the full complement of nine peremptory challenges allowed under Oklahoma law.  We disagree.  It is true that we have previously stated that the right to exercise peremptory challenges is "'one of the most important of the rights secured to the accused.'"  Indeed, the *Swain* Court cited a number of federal cases and observed:  "The denial or impairment of the right is reversible error without a showing of prejudice."  But even assuming that the Constitution were to impose this same rule in state criminal proceedings, petitioner's due process challenge would nonetheless fail.  Because peremptory challenges are a creature

---

[25] The Appellate Division, reversing H'Shaka's conviction in the first trial, only addressed the overruling of a for cause challenge in that trial.  *Heath I*, 805 N.Y.S.2d at 689-90.

of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise.  As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.[26]

H'Shaka has not argued before this Court that the jury before which he was tried in his second trial was not impartial.  Nor did he present that argument to the Appellate Division.  On direct appeal, H'Shaka's argument was that under the facts and New York law he was entitled to a reversal without showing the jury was not impartial.[27]  Whatever the merits of H'Shaka's arguments under New York law may be, by failing to present any evidence or argument that the jury that convicted him was not impartial, H'Shaka has failed to present a federal constitutional argument cognizable by this Court in a federal habeas proceeding.  H'Shaka is not entitled to relief under his second ground.

Ground 3:  Ineffective Assistance of Counsel.

H'Shaka argues that by referring to the fact that at the time he committed the alleged crime he was serving a sentence for second-degree murder and by eliciting the same testimony from H'Shaka during direct examination, trial counsel was ineffective.  H'Shaka's principal basis for his contention is that the trial court issued a pretrial order precluding the prosecution from eliciting that information.  The Appellate Division rejected H'Shaka's argument, simply stating

---

[26] *Ross v. Oklahoma*, 47 U.S. 81, 88-89 (1988) (citations omitted); *see United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) ("[I]f the defendant elects to cure [a trial court's erroneous refusal to strike a juror for cause] by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right."); *United States v. Perez*, 387 F.3d 201, 207-08 (2d Cir. 2004) (applying *Martinez-Salazar*).

[27] *See* N.Y. Penal Proc. Law, § 170.20[2]; *People v. Torpey*, 472 N.E.2d 298, 300 (N.Y. 1984).

without explanation, elaboration or citation: "[we] are unpersuaded that he received ineffective assistance of counsel at the second trial."[28]

Under *Strickland,*[29] to demonstrate ineffective assistance of counsel, H'Shaka must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[30] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[31] H'Shaka must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[32] *Strickland* and its progeny do not mandate this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[33] Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

---

[28] *Heath I*, 805 N.Y.S.2d at 690.

[29] *Strickland v. Washington*, 466 U.S. 668 (1984).

[30] *Id.* at 687.

[31] *Id*.

[32] *Woodford v. Visciotti,* 537 U.S. 19, 22-23 (2002); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[33] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[34]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[35]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[36]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[37] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[38]

---

[34] *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted).

[35] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

[36] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[37] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[38] *Id.* at 382.

H'Shaka bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[39]  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[40]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[41]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[42]  The court must then consider those acts or omissions against "prevailing professional norms."[43]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

H'Shaka has not met this heavy burden.  In this case, because his principal defense was self-defense, H'Shaka testified on his own behalf.  The fact that he was a convicted felon and serving a prison sentence was not only obvious from the facts of the crime with which he was charged, but under the trial court's ruling the length of his sentence, 25 years to life, would be

---

[39] *Strickland*, 466 U.S. at 689.

[40] *Kimmelman*, 477 U.S. at 382 (quoting *Strickland*, 466 U.S. at 689).

[41] *Strickland*, 466 U.S. at 681.

[42] *Id*. at 690.

[43] *Id*.

brought out on cross-examination by the prosecutor.  In bringing out the nature of H'Shaka's conviction through H'Shaka's own testimony, counsel was clearly attempting to, as Respondent notes, blunt the sting.  In short, by being totally up-front and not hedging on this issue, counsel was attempting to bolster H'Shaka's credibility and avoid any undue jury speculation as to the nature of the conviction.

H'Shaka has produced no evidence indicating that it was unreasonable for counsel to choose this trial strategy.  H'Shaka presented no alternate attorney's determination challenging counsel's decision to come forward with the fact of his prior conviction, for which H'Shaka was serving a substantial sentence at the time of the alleged crime.  H'Shaka has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[44]  Most importantly, H'Shaka has provided no compelling or credible argument that had the fact he had been convicted of second-degree murder not been disclosed there is any reasonable probability the outcome would have been different.

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[45]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the H'Shaka's case within the

---

[44] *Id.* at 688.

[45] 28 U.S.C. § 2254(d).

scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  H'Shaka has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  In particular, H'Shaka has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  H'Shraka is not entitled to relief under his third ground.

Ground 4:  Prevention of Presenting a State of Mind Defense.

H'Shaka contends that the trial court prevented him from presenting evidence concerning injuries he suffered at the hands of prison guards in response to the alleged assault.  H'Shaka argues that this evidence, which showed the hostility and bias of the prison guards, bore on his state of mind and his theory that he was acting in self-defense.  The Appellate Division rejected H'Shaka's arguments, simply holding without explanation, elaboration or citation: "we find no error in any of the evidentiary rulings."[46]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[47]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[48]

---

[46] *Heath I*, 805 N.Y.S.2d at 690.

[47] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[48] *Estelle*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

As set forth in his brief on direct appeal, the evidence H'Shaka claims was erroneously excluded was:

> Prior to the retrial, defense counsel sought rulings in limine permitting the introduction of (1) evidence of what county court derisively termed "mythical institutional threats" directed at inmates, which counsel argued were relevant to Mr. Heath's state of mind at the time of the alleged assault on Saddlemire, and (2) evidence of injuries inflicted on Mr. Heath by prison guards in the aftermath of the alleged assault, which counsel argued were relevant to issues of the credibility and motives of the prison guards involved.  County court reserved decision on whether to permit evidence of institutional threats.  The court ruled flatly inadmissible any evidence of Mr. Heath's injuries.  It later struck his testimony during the second trial that one of the guards involved in the incident broke his fingers and urinated on him, that one of them tried to break his arm, and that he spent three weeks in the hospital after the incident (A 343-54, 541, 579, 583-4, 589-90).
>
> When the defense attempted at trial to introduce through a fellow inmate, Raoul Torres, evidence of institutional threats, county court ruled it inadmissible as "hearsay" (A 521-30).  The court permitted Mr. Heath to give only limited testimony concerning the two generalized threats he heard prison guards utter.  It sustained the prosecutor's objections to questions concerning his prior dealings with Sergeant Premo, and it struck Mr. Heath's testimony describing his understanding of what Premo's statements to him meant.  When Mr. Heath began describing a conversation with inmate Riley that ensued after he asked Riley to call his family, which might have further elucidated Mr. Heath's state of mind, the court jumped in and assumed a prosecutorial rule, stating, "I'm going to object to that hearsay now" (A 539-42, 548-53, 561-62, 567-9).[49]

The trial court ruled, on the admission of the evidence in question, as follows:

> THE COURT:  All right.  In regard to Mr. Heath's testimony, the Court has previously reserved on defense's motion for rulings as to whether the defendant, Corey Heath, will be allowed to testify as to certain events and things that he heard.
>
> The Court's ruling is as follows:  Mr. Heath may not testify as to any mythical institutional threat as enunciated by nameless and faceless people at prior unnamed correctional facilities, that is, what he heard about correctional facilities before he arrived there.
>
> However, the Court is going to allow Mr. Heath to testify as to what happened to him and as to what he observed and as to what he heard after he

---

[49] Docket No. 13-2, pp. 41-42.

arrived at Coxsackie Correctional Facility, including the events and circumstances of the date in question, and I believe testimony in regard to past dealings with an officer in the commissary, or the cafeteria.  I think there's testimony of a prior episode where he was chastened for not knowing something about trays or something like that?

MR. DAVIS:  Correct your Honor.

THE COURT:  All right.  The Court makes this ruling out of caution to not unduly restrict Mr. Heath's trial defense, which is one entirely of justification, because the justification defense requires the defense to show that Mr. Heath reasonably believed that undue force was about to be used on him.  The defendant's state of mind is relevant, even though it is so very difficult for the People to cross-examine as to one's state of mind.

Therefore, the Court will allow evidence establishing the defendant's subjective belief at the time of the events charged in the indictment as previously stated and the facts and circumstances surrounding those events.

Now, if I allow this defense to go to the jury, it is for the jury to decide if Mr. Heath, in fact, had such belief and whether such belief was reasonable under the circumstances.

In making this ruling, the Court is relying on the following cases, amongst others:  *People versus Wesley,* 76 NY2d 555, *People versus Lona,* 190 AD2d 1006, and *People versus Goetz,* 68 NY2d 96.

The ruling does not mean the People are prohibited any objections to any portion of the testimony as it comes in by the prosecution or the People.  Upon any objection, the Court will render a ruling on that particular portion, and as appropriate under the circumstances.

The Court repeats its prior ruling that the defense is not going to be permitted reference to admit any evidence of videotapes, photographs, medical records, relative to any injuries sustained by Mr. Heath on or about the date in question.  The Court finds that such evidence is not relevant insofar as it's not relevant -- not relevant.

Finally, there is no mention of any past trials, results or outcomes of other trials, the *Spencer* trial or the past *Heath* trial or anything that has gone down in the past.  You have an exception to my ruling.[50]

The hearsay rule and its exceptions are rules of evidence.  No court, let alone the United States Supreme Court, has ever held that the hearsay rule was mandated by the Constitution of the United States, other than to the extent it violated the confrontation clause of the Sixth Amendment.   "A district court is accorded a wide discretion in determining the admissibility of

---

[50] Docket No. 13-19, pp. 232–34.

evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[51]  New York employs a similar rule.[52]

Having reviewed the record, including the testimony that was admitted on the subject of H'Shaka's state of mind as set forth in Respondent's response, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[53]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of H'Shaka's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  H'Shaka is not entitled to relief under his fourth ground.

Ground 5:  Improper Duty to Retreat Instruction.

H'Shaka contends that the trial court erred in charging the jury with an instruction on the duty to retreat as it related to his self-defense claim.  H'Shaka raised this ground on direct appeal. In his appellate brief H'Shaka argued that because:  (1) there was no place in the prison to which he could retreat with safety from the guard; and (2) his only avenues of retreat were blocked by

---

[51] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[52] *People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[53] 28 U.S.C. § 2254(d).

guards, there was no evidence he could retreat with safety.[54]   The Appellate Division rejected

H'Shaka's position without explanation, elaboration or citation, simply stating that it  found "no

error in . . . County Court's charge to the jury."[55]

The instruction on self-defense, in its entirety, read:

Now, I turn to the issue of self-defense.  Our Penal Law sets forth circumstances under which a person is justified in using deadly physical force against another person.  One of these circumstances is self-defense or "justification."  In this case, the defendant asserts he was justified in committing the acts charged in the indictment because he committed them in self-defense.

You should not interpret this instruction on the issue of self-defense to mean that the Court has an opinion about the validity of that defense.  Rather, that the validity of that defense is for you, the jury, to decide on the basis of the evidence presented to you.  You will only consider the issue of self-defense if you first determined that the People have established all the elements of the crime of Assault in the First Degree.

If you do not reach the issue of self-defense, then the law provides it's the people's burden to disprove the defendant's defense.

MR. CLOKE:  Excuse me your Honor.

THE COURT:  I'm sorry.

MR. CLOKE:  I believe you misspoke.  You inserted a "not."

THE COURT: All right.  I'll go back and start back the paragraph.  You should not interpret these instruction on the issue of self-defense to mean that the Court has an opinion about the validity of self-defense.  Rather the validity of this defense is for you, the jury, to decide on the basis of all evidence presented to you.  You will only consider the issue of self-defense if you have first determined that the People have established all the elements of the crime of Assault in the First Degree, as I've just outlined them to you.

If you do reach this issue of self-defense, the law provides that it is the People's burden to disprove the defendant's defense.  In other words, the People must prove by evidence beyond a reasonable doubt that the defendant was not acting in self-defense.

The law provides that a person may lawfully use deadly physical force against another person when, and to that extent, he reasonably believes the use of deadly physical force is necessary to defend himself from what he reasonably

---

[54] Docket No. 13-2, p. 66.

[55] *Heath I*, 805 N.Y.S.2d at 690.

believes to be the other person's use or imminent use of deadly physical force against himself.

The term *deadly physical force* is defined by the law as physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

*Serious physical injury* is physical injury which creates a substantial risk of death, or causes death, or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

Now, a person is not justified in using deadly physical force upon someone, however, if he was the initial aggressor.  Therefore, if you determine the People have proven by evidence beyond a reasonable doubt that the defendant was the initial aggressor, then you need not deliberate any further on the justification defense -- you must reject it.

In determining if the defendant was the initial aggressor, you should consider the following rules:

(A)     The person who takes the offensive when he is neither being attacked nor about to be attacked and either strikes or attempts to strike the first blow or inflict the first wound is the initial aggressor.

(B)     A person need not wait until he's struck or wounded before using deadly physical force if he reasonably believes that the other person is about to use deadly physical force upon him.  If a person uses physical force to prevent imminent deadly physical force being used against him, then he is not the initial aggressor even though he strikes the first blow.

(C)     Verbal quarreling, name-calling unaccompanied by any physical acts do not justify the use of physical force, deadly or otherwise.

To review, it is the People's burden to establish, by evidence beyond a reasonable doubt, that the defendant was the initial aggressor.  If you find the defendant was the initial aggressor, then you must reject his defense of justification.  However, if you find that the defendant was not the initial aggressor, then you must consider my further instructions on the law of self-defense.

According to the law, a person is justified in using deadly physical force against the other person when he reasonably believes that the use of deadly physical force is necessary to defend himself from what he reasonably believes to be the other person's use or imminent use of deadly physical force against him.

The law further provides that if a person reasonably believes both of the above, such person may nevertheless not use defensive deadly physical force if he knows that, with complete safety, he can  avoid the use of deadly physical force by retreating.

The People have the burden of disproving the defendant's defense of justification by proving, by evidence beyond a reasonable doubt, that the defendant did not reasonably believe that his use of deadly force was necessary in order to defend himself against his assailant's imminent use of deadly physical force against him.

18

"Reasonably believes" is the test.  Even if, in fact, the defendant was mistaken in his belief, the law provides that if the defendant reasonably believed that deadly force was, or was about to be, used against him, he is entitled to uses [*sic*] deadly physical force to the extent that he reasonably believes is necessary to defend himself.

In order for you to determine whether the defendant reasonably believed that deadly physical force was necessary to defend himself against his alleged assailant's use or imminent use of offensive deadly force, you should use a two-step process:

First, you must determine what the defendant, in fact, believed;

Then you must decide if this belief by the defendant was reasonable.

To determine what the defendant's actual belief -- to determine the defendant's actual belief, you should review all of the evidence and decide what actually took place between this defendant and Alec Saddlemire before and during their encounter.  Then, you should put yourself in the defendant's shoes in that exact situation and consider how the situation would have appeared to the defendant.

In doing this, consider what was said and done before and during the encounter, whether any weapons were possessed, whether there were any differences in the persons' physical sizes as well as any other relevant subjective factors.  With all of the relevant circumstances in mind, ask yourself the question of whether this defendant believed that his use of defensive deadly physical force was necessary in order to defend himself from his assailant's use or imminent use of offensive deadly physical force.

If you find the defendant did have this belief, you will go then on to the second step which you will decide whether the defendant's belief was reasonable under all of these circumstances.

To determine if defendant's belief was reasonable under all of the circumstances, you should consider whether the average, reasonable person who found himself in this exact situation that the defendant was in would reasonably conclude that deadly physical force was necessary to defend themselves against his assailant's use or imminent use of offensive deadly physical force.

As the Court instructed you earlier, and does so again, the People have the burden to prove to your satisfaction, by evidence beyond a reasonable doubt, the defendant did not act in self-defense.  Thus, in order to disprove the defense of justification, the People must prove that the defendant did not reasonably believe that it was necessary to use deadly physical force in order to defend himself against what the defendant reasonably believed to be his assailant's use or imminent use of offensive deadly physical force.

If the People have failed to convince you of this beyond a reasonable doubt, then you must find the defendant acted in self-defense and find him not guilty of the crime of Assault in the First Degree.

> Only if the People convince you beyond a reasonable doubt that the defendant was not acting in self-defense, then you may find the defendant guilty of the crime of Assault in the First Degree.[56]

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[57]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[58]  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.[59]  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[60]

H'Skaka has pointed to no specific right guaranteed by the Bill of Rights that was violated.  He has not shown that the jury was precluded from considering any relevant evidence, including the "evidence" H'Skaka claims established the lack of an ability to safely retreat. Taken in their entirety, the self-defense instructions repeatedly reiterated that the burden was on the people to prove, beyond a reasonable doubt, that H'Shaka was not acting in self-defense. This Court must, in the absence of clear and convincing evidence to the contrary, presume that

---

[56] Docket No. 13-20, pp. 98-106 (italics in the original; portion objected to is underlined).

[57] *Boyde v. California,* 494 U.S. 370, 380 (1990).

[58] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[59] *Estelle*, 502 U.S. at 72-73.

[60] *Id*.

the jury followed those instructions.[61]  In this case, the jury implicitly found that the People had, in fact, proved that H'Shaka had not acted in self-defense, including a finding that H'Shaka could have safely retreated.

Based upon the record before it, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[62]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of H'Shaka's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  H'Shaka is not entitled to relief under his fifth ground.

Ground 6:  Repugnance in the Assault Conviction.

H'Shaka contends that because the People failed to re-prosecute him on the promoting prison contraband charge, the conviction on the assault charge created a repugnancy. Specifically, H'Shaka argues that dismissal of the contraband charge caused a necessary element of the assault charge, the use of a dangerous instrument, to be missing.  H'Skaka presented this argument in his § 440.10 motion.  The Green County Court rejected H'Shaka's argument, holding:

---

[61] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis*, 471 U.S. at 324 n. 9.

[62] 28 U.S.C. § 2254(d).

On July 28, 1998, Defendant was convicted of the crime of Promoting Prison Contraband in the First Degree after the Court accepted a partial verdict.

On November 24, 1998, upon re-trial on the remaining charges of the indictment, Defendant was convicted of the crime of Assault in the First Degree.

On December 8, 2005, Defendant's conviction for Promoting Prison Contraband in the First Degree was reversed and remanded for re-trial; Defendant's conviction for Assault in the First Degree was upheld on appeal.

On January 12, 2007, this Court dismissed the remanded charge of Promoting Prison Contraband in the First Degree on the basis of a speedy trial violation.

Presently pending before the Court is Defendant's CPL § 440.10 motion wherein he seeks vacatur of the November 24, 1988 judgment of conviction of the crime of Assault in the First Degree on the basis that such "is repugnant as a matter of law". [*Sic*]

The People oppose the motion.

For the reasons advanced in the People's Affirmation in Opposition, and the procedural history of the case as outlined above, the Court **DENIES** the motion in its entirety.[63]

In Opposition, the People contended:

2.    That, as the Court is aware, the dismissal of the indicted count of Promoting Prison Contraband was not a "verdict" nor a dismissal based upon the merits of the charge.  Rather, it is a technical dismissal based upon a "speedy trial" basis.

3.    That therefore, said dismissal is irrelevant to any argument regarding a "repugnant verdict".  [*Sic*]  The only verdict ever rendered with regard to the Promoting Prison Contraband charge was "guilty" and a subsequent reversal and dismissal on technical grounds (ie. speedy trial) does nothing to impair the integrity of the Assault 1st conviction.

4.    The defendant's attempt to apply the legal doctrine of a repugnant or inconsistent verdict to the facts and procedural history of this case is misplaced and without merit.[64]

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other."[65]  "Whether verdicts are

---

[63] Docket No. 13-12, p. 2.

[64] Docket No. 13-10, p.2.

[65] N.Y. Crim. Proc. Law § 300.30[5].

repugnant or inconsistent . . . is determined by examining the charge to see the essential elements

of each count, as described by the trial court, and determining whether the jury's findings on

those elements can be reconciled."[66]  In this case there is no inconsistent verdict, judgment of

acquittal, or other termination on the merits.[67]  Although under New York law the speedy trial

"dismissal constitutes a bar to any further prosecution of such charge or charges, by indictment or

otherwise, in any criminal court within the county,"[68] no New York Appellate Court has held that

a speedy trial procedural dismissal was on the merits of the criminal charge, *i.e.*, the functional

equivalent of a judgment of acquittal.  No court, let alone the New York Court of Appeals or the

United States Supreme Court, has ever held that a criminal defendant must be charged with, or

convicted of, every possible charge arising out of a single criminal transaction that the evidence

may logically support.

Even if there were an inconsistent verdict, H'Shaka would not prevail.  The Supreme

Court has consistently held that in a criminal case, a jury's apparent inconsistent verdict is

allowed to stand.[69]  Thus, H'Shaka does not present a federal constitutional claim cognizable in

---

[66] *People v. Loughlin,* 559 N.E.2d 656, 657-58 (1990) (citing *People v. Tucker*, 431 N.E.2d 617, 620 (1981)).

[67] Indeed, quite to the contrary, the jury had found H'Shaka guilty of the promoting prison contraband charge.  That guilty verdict was reversed by the Appellate Division on direct appeal and remanded to the Greene County Court for retrial on that charge.

[68] N.Y. Crim. Proc. Law § 210.20[4].

[69] *See United States v. Powell,* 469 U.S. 57, 64-65 (1984) (reaffirming general rule that inconsistent verdicts can stand); *Harris v. Rivera,* 454 U.S. 339, 345 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside"); *Hoag v. New Jersey,* 356 U.S. 464, 472 (1958) ("[J]ury verdicts are sometimes inconsistent or irrational"); *United States v. Dotterweich,* 320 U.S. 277, 279 (1943) ("Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty instead of merely

(continued...)

this Court in a federal habeas proceeding.  Based upon the record before it, this Court cannot say

that the decision of the Greene County Court was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[70]  Nor can this Court find that the state court

unreasonably applied the correct legal principle to the facts of H'Shaka's case within the scope of

*Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its

application of clearly established law was objectively unreasonable.  H'Shaka is not entitled to

relief under his sixth ground.

## V.  CONCLUSION AND ORDER

H'Shaka is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[71]  To the extent the issues raised in the Petition were addressed by the Appellate

Division, Third Department, or the Greene County Court, no reasonable jurist could find that the

---

[69](...continued)
increasing, as it were, the cost of running the business of the corporation, is immaterial.  Juries
may indulge in precisely such motives or vagaries"); *Dunn v. United States,* 284 U.S. 390, 393
(1932) ("Consistency in the verdict is not necessary").

[70] 28 U.S.C. § 2254(d).

[71] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists
could debate whether (or, for that matter, agree that) the petition should have been resolved in a
different manner or that the issues presented were adequate to deserve encouragement to proceed
further") (internal quotation marks omitted).

decision was "objectively unreasonable."  Any further request for a Certificate of Appealability

must be addressed to the Court of Appeals.[72]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  April 27, 2010.

                                            /s/ James K. Singleton, Jr.
                                        JAMES K. SINGLETON, JR.
                                        United States District Judge

---

[72] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.